Filed 7/28/26  In re Emanuel O. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re EMANUEL O., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E087777 |
| Plaintiff and Respondent, | (Super.Ct.No. J300078) |
| v. | OPINION |
| N.O., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michelle Lauron, Judge.  Affirmed.

Timothy O'Crowley, under appointment by the Court of Appeal, for Defendant and Appellant.

Laura Feingold, County Counsel, and David R. Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

N.O. (Mother) appeals from the termination of her parental rights to her minor son, Emanuel O.  She argues that the San Bernardino County Department of Children and Family Services (CFS) failed to discharge its duties of inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related state law.  We affirm.

BACKGROUND

I.      *Referral and detention*

In February 2024, Emanuel (then 17 months old) came to CFS's attention through an immediate response referral alleging general neglect and physical abuse of Emanuel and his older half-sister, Desiree, who is not a subject of this appeal.  Desiree had told "a mandated reporter [that] she had been hit with a belt by the maternal grandmother," and she was afraid to go home.  She also said that Mother was incarcerated.  CFS obtained a warrant, took the children into protective custody, and filed a petition under subdivision (b) of Welfare and Institutions Code section 300, alleging that Mother failed to make appropriate provisions for Emanuel's care, has a substance abuse problem and a criminal history, and is currently incarcerated.  (Unlabeled statutory citations refer to the Welfare and Institutions Code.)  CFS interviewed the maternal grandmother, and she said that she did not have any Indian ancestry.[1]

At the detention hearing, the court detained the children and ordered CFS to attempt to contact Mother in prison for help in identifying the children's fathers.

---

[1]     Because ICWA uses the term "Indian," we use it as well "to reflect the statutory language."  (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).)

2

II.     *Jurisdiction and disposition*

CFS found the prison where Mother was incarcerated and sent her notice of the jurisdiction and disposition hearings. CFS's jurisdiction and disposition report stated that the identities of the children's fathers were unknown. The social worker reported that the maternal grandmother and Desiree denied having Indian ancestry on the maternal side of the family. The maternal grandmother also told CFS that she had the children's birth certificates, and their fathers were not listed on them.

In an addendum report, CFS reported that Mother denied having Indian ancestry. Mother told CFS that H.L. was Emanuel's father.

At a continued jurisdiction and disposition hearing in May 2024, Mother appeared by telephone. She again asserted that H.L. was Emanuel's father. Mother told the court that she previously lived with H.L. in Anaheim, California when she was pregnant with Emanuel, and she was not married to him. She said that H.L. passed away before Emanuel was born, she did not know H.L.'s birthdate, and "[h]e was already 48, 49" when he passed away. Mother also denied having any Indian ancestry, and she denied having any relatives who were members of an Indian tribe. The court ordered CFS to attempt to locate H.L., and it continued the hearing.

CFS searched for H.L. in obituaries and San Bernardino County and Los Angeles County death registration records for the relevant time period but could not find anyone by that name. CFS also reported that it had spoken to maternal aunt E.G., maternal cousin C.P., and maternal uncle D.C., and they denied knowing of any Indian ancestry.

3

At the continued jurisdiction and disposition hearing in June 2024, maternal uncle D.C., maternal uncle M.C., and the maternal grandmother denied having Indian ancestry. The court sustained the petition in part, adjudged the children dependents of the court, and removed them from Mother. The court found that ICWA may apply, and it ordered CFS to continue inquiring. The court also found that H.L. was Emanuel's alleged father and not entitled to reunification services. The court bypassed Mother for reunification services pursuant to subdivision (e)(1) of section 361.5 and set the matter for a section 366.26 hearing.

III.     *Section 366.26 hearing*

At a July 2024 hearing concerning relative placement, maternal aunt E.S. and maternal uncle N.S. denied having Indian ancestry. The court found that the children's relatives were not "able, willing, or ready to take placement of the children," and it ordered that the children remain with their current caretakers.

CFS continued its search for H.L. but still could not locate him. At a hearing in August 2024, the court found that CFS had complied with its duty of inquiry, there was no reason to know that Emanuel was an Indian child, and ICWA did not apply.

With court authorization, CFS subsequently placed the children in maternal uncle A.O.'s care. But in February 2025, CFS filed a section 387 petition alleging that A.O. had allowed the maternal grandmother to care for Emanuel. Desiree reported that A.O. had asked her to keep secrets and that Emanuel had been staying with the maternal grandmother for three weeks.

4

At the detention hearing on the section 387 petition in February 2025, the court ordered the children detained in CFS's care. CFS subsequently filed a report informing the court that maternal uncle A.O., maternal aunt E.S., Desiree, and the maternal grandmother denied having Indian ancestry. At the subsequent jurisdiction and disposition hearing, the court sustained the section 387 petition, removed the children from A.O., and set the section 366.26 hearing. The court also found that ICWA may apply, and it ordered CFS to continue to inquire.

In April 2025, CFS filed another declaration of due diligence describing its efforts to find H.L. CFS reported that its search for H.L. was unsuccessful, and his whereabouts remained unknown. CFS also filed an "additional information to the court," reporting on its ICWA inquiries. CFS had asked the maternal grandmother, maternal aunt E.S., maternal cousin M.P., and maternal cousin C.P., whether they had Indian ancestry, which they denied. CFS had also contacted maternal uncle A.O. about Indian ancestry but had not yet received a response.

The court held an ICWA notice review hearing, and CFS told the court that "some of the responses say that relatives do have [Indian] ancestry. It isn't clear if they state the child … has [Indian] ancestry." The court then set the matter for a further review hearing in June 2025.

For the June hearing, CFS filed an "additional information to the court," reporting that the maternal aunt E.S. said that she did "not know of the children having any" Indian ancestry. CFS also reported that it "was unable to get a contact information for [E.L.]," and "[t]he family was unable to identify who this could be."

5

CFS filed a section 366.26 report informing the court that Emanuel had been placed in the home of maternal cousin Ms. P. At a hearing in July 2025, CFS asked the court to continue the matter for 120 days because of the recent change of placement. The court set a further ICWA notice review hearing for August 2025 and set the section 366.26 hearing for October 2025. At the further IWCA notice review hearing, CFS's counsel confirmed that E.L. was Mother's friend and that she did not know about any Indian ancestry.

At the October 2025 hearing, the court again continued Emanuel's section 366.26 hearing for CFS to continue to assess his placement. The court asked Mother whether she had any new information about Indian ancestry, and Mother responded that she did not. The court found that ICWA did not apply.

At the continued section 366.26 hearing in January 2026, the court terminated parental rights to Emanuel and ordered adoption as Emanuel's permanent plan.

DISCUSSION

Mother argues that the court erred by finding that CFS's ICWA inquiry was adequate, because CFS did not ask any maternal relatives whether "there were any paternal relatives that could be contacted to inquire about an ICWA inquiry." We disagree.

To be an Indian child within the meaning of ICWA, a child must be either (1) a member or citizen of a federally recognized Indian tribe, or (2) eligible for membership or citizenship in such a tribe and the biological child of a member or citizen. (25 U.S.C. § 1903(4), (8); § 224.1, subds. (a)(4), (b)(1); *In re Jonathon S.* (2005) 129 Cal.App.4th

6

334, 338.) The child welfare department and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), disapproved on another ground by *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18 (*Dezi C.*).)

"The duty of initial inquiry applies in every dependency proceeding." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.) The child welfare department's duty to inquire begins "when first contacted regarding a child." (§ 224.2, subd. (b)(1).) The department must ask the "party reporting child abuse or neglect whether the party has any information that the child may be an Indian child," and the department must also ask the child and the child's family members, including extended family members, upon first contact with those individuals. (*Ibid.*) In addition, if the child is taken into the department's temporary custody under section 306, "or if they were initially taken into protective custody pursuant to a warrant described in Section 340," then the department must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).) We review the juvenile court's determination that the ICWA inquiry was proper and adequate for abuse of discretion. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

Under ICWA, a "'parent' means any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under

tribal law or custom. It does not include the unwed father where paternity has not been acknowledged or established." (25 U.S.C. § 1903(9).) "A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father." (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15.) "[A]n alleged father may acknowledge or establish paternity by voluntarily signing a declaration of paternity at the time of the child's birth, for filing with the birth certificate (Fam. Code, § 7571, subd. (a)), or through blood testing (Fam. Code, § 7551)." (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708-709.) "An alleged father may or may not have any biological connection to the child." (*In re E.G.* (2009) 170 Cal.App.4th 1530, 1533.) "[A]bsent a biological connection, the child cannot claim Indian heritage through the alleged father." (*Ibid*.) Consequently, the requirements of ICWA are not triggered until biological parentage is established. (See *ibid*.)

The juvenile court may find that ICWA does not apply to the proceedings if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.)

The court found that H.L. was Emanuel's alleged father. Although Mother told the court that H.L. was Emanuel's father and that he had passed away before Emanuel was born, CFS was not able to confirm whether H.L. was alive or dead or had ever existed at all. The record contains no evidence that H.L. ever acknowledged or established paternity. H.L. was not married to Mother, he was not listed on Emanuel's birth certificate, and there is no evidence of a blood test establishing biological paternity. H.L.

8

therefore was not Emanuel's parent within the meaning of ICWA, so CFS had no duty to inquire whether H.L. had Indian ancestry.

For the foregoing reasons, Mother has not shown that the juvenile court abused its discretion by finding CFS's inquiry proper and adequate.

DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.

FIELDS
J.